1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   KHALIFAH E.D. SAIF'ULLLAH,

11              Petitioner,                    2: 08 - cv - 2151 - MCE TJB

12        vs.

13   D.K. SISTO

14              Respondent.                    ORDER AND FINDINGS AND

15                                             RECOMMENDATIONS

16   _____/

17                            I.  INTRODUCTION

18        Petitioner, Khalifah E.D. Saif'ullah[1], is a state prisoner proceeding *pro se* with a petition

19   for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner is currently serving a sentence

20   of seven years to life imprisonment following a 1980 conviction for kidnapping.  Petitioner

21   challenges the October 10, 2006 decision by the Board of Parole Hearings ("Board") which

22   denied him parole.  Petitioner presents several claims in this federal habeas petition;

23   specifically:  (1) the denial of his parole violated the federal and state constitution because the

24   denial was based upon the nature of his commitment offense thereby violating the Due Process

25   _____

26       [1] Petitioner has also been known as Fernando Jackson.  Documents in the record often
     refer to him as such.

                                    1

1  Clause ("Claim I"); (2) the denial of his parole by the Board was in error as Petitioner's positive

2  efforts while incarcerated support suitability for parole and outweigh all the negative factors of

3  his unsuitability for parole ("Claim II"); (3) the Board violated the Ex Post Facto Clause by

4  altering Petitioner's sentence to one of life imprisonment without the possibility of parole

5  ("Claim III"). Petitioner also requests that counsel be appointed and that this Court conduct an

6  evidentiary hearing. Based on a thorough review of the record and the applicable law, it is

7  recommended that Petitioner's Petition for writ of habeas corpus be denied.

8                               II. FACTUAL AND PROCEDURAL BACKGROUND[2]

9               On the date of the crime, which was September 26th, 1978, at
                approximately 5:30 p.m. Kenneth Cowan arrived at his work
10              location. After parking his car, a suspect, later identified as
                Fernando Jackson, came up, pointed a gun at him and ordered him
11              to get back into his car. Another male companion got into the car
                and Jackson got into victim's car and started driving away. The
12              victim was then tied up in the back seat. The assailants drove the
                victim around for approximately 20 minutes and then went to an
13              apartment building. The victim was taken into an apartment where
                he was held captive. While in captivity, he was forced to record a
14              ransom tape to send to his parents stating he was okay and to give
                them anything they wanted. The victim was injected with some
15              kind of drug. Jackson told him it would make him sleep. While in
                captivity, the victim was told that his family had been watched for
16              approximately 18 months and asked if they would pay sixty
                [thousand] dollars for his release. His captors also photographed
17              him on September 27th, 1978. The next day the victim managed to
                escape and fled safely to his residence. The incident however was
18              reported on September 28th, 1978. The victim was taken to where
                he thought he was held captive and then identified Jackson as one
19              of his kidnappers.

20  (Pet'r's Pet. at p. 41-42.) In 1980, Petitioner was convicted of kidnapping. Petitioner received a

21  seven years to life sentence.[3] On October 10, 2006, the Board conducted a subsequent parole

22  _____

23          [2] The factual background of the commitment offense is taken from the probation report
        which was read into the record at Petitioner's parole hearing. The Petitioner attached the parole
24  suitability hearing transcript to his Petition at p. 32-144.

25          [3] Petitioner and the Respondent disagree as to whether Petitioner received a sentence of
        seven years to life or nine years to life. (Compare Pet'r's Pet. at p. 1 with Resp't's Answer at p.
26  1.) Based on the record before this Court, it appears as if Petitioner was ultimately sentenced to

1   consideration hearing on Petitioner.  The Board ultimately concluded that Petitioner was not

2   suitable for parole at this time because he posed an unreasonable risk of danger to society or

3   threat to public safety if released from prison.

4        Petitioner challenged the Board's decision denying him parole in Los Angeles County

5   Superior Court via a state habeas petition.  That court denied his state habeas petition on

6   September 21, 2007 in a written opinion.  The California Court of Appeal, Second Appellate

7   District and the California Supreme Court denied Petitioner's state habeas petition without

8   written comment.

9                III.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

10       An application for writ of habeas corpus by a person in custody under judgment of a state

11  court can only be granted for violations of the Constitution or laws of the United States.  See 28

12  U.S.C. § 2254(a); see also Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v.

13  Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).

14  Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus the Antiterrorism

15  and Effective Death Penalty Act of 1996 ("AEDPA") applies.  See Lindh v. Murphy, 521 U.S.

16  320, 326 (1997).  Under AEDPA, federal habeas corpus relief is not available for any claim

17  decided on the merits in the state court proceedings unless the state court's adjudication of the

18  claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of,

19  clearly established federal law, as determined by the Supreme Court of the United States; or (2)

20  resulted in a decision that was based on an unreasonable determination of the facts in light of the

21  evidence presented in state court.  See 28 U.S.C. 2254(d).

22  _____

23  seven years to life imprisonment.  Included within Petitioner's federal habeas petition is the trial
    court's correction of the abstract of judgment which struck an additional two years sentence
24  enhancement for use of a firearm and a one year enhancement for a prior burglary.  In striking
    those two additional sentences, the trial court stated instead that "The Community Release Board
25  will make some consideration of the use of a gun allegation and the prior in determining what the
    parole date is." (Pet'r's Pet. at p. 96.)  Nonetheless, the discrepancy between seven years to life
26  and nine years to life does not effect this Court's disposition of this federal habeas petition.

3

1   If a state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

2   court must conduct a *de novo* review of a petitioner's habeas claims. See Delgadillo v.

3   Woodford, 527 F.3d 919, 925 (9th Cir. 2008). Additionally, if a state court reaches a decision on

4   the merits but provides no reasoning to support its conclusion, a federal habeas court

5   independently reviews the record to determine whether habeas corpus relief is available under §

6   2254(d). See Larson v. Palmateer, 515 F.3d 1057, 1062 (9th Cir. 2010).

7       As a threshold matter, this Court must "first decide what constitutes 'clearly established

8   Federal law, as determined by the Supreme Court of the United States.'" Lockyer v. Andrande,

9   538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)). "'[C]learly established federal law'

10  under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court

11  at the time the state court renders its decision.'" Id. This Court must consider whether the state

12  court's decision was "contrary to, or involved an unreasonable application of, clearly established

13  Federal law." Lockyer, 538 U.S. at 72. Under the unreasonable application clause, a federal

14  habeas court making the unreasonable application inquiry should ask whether the state court's

15  application of clearly established federal law was "objectively unreasonable." See Williams v.

16  Taylor, 529 U.S. 362, 409 (2000). Thus, "a federal court may not issue the writ simply because

17  the court concludes in its independent judgment that the relevant state court decision applied

18  clearly established federal law erroneously or incorrectly. Rather, that application must also be

19  unreasonable." Id. at 411. Although only Supreme Court law is binding on the states, Ninth

20  Circuit precedent remains relevant persuasive authority in determining whether a state court

21  decision is an objectively unreasonable application of clearly established federal law. See Clark

22  v. Murphy, 331 F.3d 1062, 1072 (9th Cir. 2003) ("While only the Supreme Court's precedents

23  are binding . . . and only those precedents need be reasonably applied, we may look for guidance

24  to circuit precedents.").

25      The first step in applying AEDPA's standards is to "identify the state court decision that

26  is appropriate for our review." See Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005).

4

1   When more than one court adjudicated Petitioner's claims, a federal habeas court analyzes the

2   last reasoned decision. Id. (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). In this case,

3   the last reasoned state court opinion was from the Los Angeles County Superior Court.

4                       IV.   DISCUSSION OF PETITIONER'S CLAIMS

5          A. Claim I

6          In Claim I, Petitioner alleges that the Board's denial of his parole violated his due process

7   rights because the denial was based solely on the facts of the commitment offense. Petitioner

8   alleges that the denial violated both the state and federal constitution. At the outset, to the extent

9   that Petitioner claims his denial of parole violated the California Constitution, this Court notes

10  that "federal habeas relief does not lie for errors in state law." See Lewis v. Jeffers, 497 U.S.

11  764, 780 (1990). Thus, that portion of Petitioner's federal habeas petition is without merit.

12         The Due Process Clause of the Fourteenth Amendment of the United States Constitution

13  prohibits state action that deprives a person of life, liberty, or property without due process of

14  law. A person alleging a due process violation must first demonstrate that he or she was

15  deprived of a protected liberty or property interest, and then show that the procedures attendant

16  upon the deprivation were not constitutionally sufficient. See Ky. Dep't of Corr. v. Thompson,

17  490 U.S. 454, 459-60 (1989).

18         A protected liberty interest may arise either from the Due Process Clause itself or from

19  state laws. See, e.g., Bd. of Pardons v. Allen, 482 U.S. 369, 373 (1987). The United States

20  Constitution does not, in and of itself, create a protected liberty interest in the receipt of a parole

21  date. See Jago v. Van Curen, 454 U.S. 14, 17-21 (1981). However, if a state's statutory parole

22  scheme uses mandatory language, it "creates a presumption that parole release will be granted"

23  when or unless certain designated findings are made, thereby giving rise to a constitutional

24  liberty interest. McQuillian v. Duncan, 306 F.3d 895, 901 (9th Cir. 2002) (quoting Greenholtz v.

25  Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 12 (1979)).

26         The full panoply of rights afforded a defendant in a criminal proceeding is not

5

1   constitutionally mandated in the context of a parole proceeding.  See Pedro v. Or. Parole Bd., 825

2   F.2d 1396, 1398-99 (9th Cir. 1987).  The Supreme Court has held that a parole board's

3   procedures are constitutionally adequate if the inmate is given an opportunity to be heard and a

4   decision informing him of the reasons he did not qualify for parole.  See Greenholtz, 442 U.S. at

5   16.

6          As a matter of state law, denial of parole to California inmates must be supported by at

7   least "some evidence" demonstrating current dangerousness.  See Hayward v. Marshall, 603 F.3d

8   546, 562-63 (9th Cir. 2010) (en banc) (citing In re Rosenkrantz, 29 Cal. 4th 616, 128 Cal. Rptr.

9   2d 104, 59 P.3d 174 (2002); In re Lawrence, 44 Cal. 4th 1181, 82 Cal. Rptr. 3d 169, 190 P.3d

10  535 (2008); In re Shaputis, 44 Cal. 4th 1241, 82 Cal. Rptr. 3d 213, 190 P.3d 573 (2008)).

11  "California's 'some evidence' requirement is a component of the liberty interest created by the

12  parole system of the state."  Cooke v. Solis, 606 F.3d 1206, 1213 (9th Cir. 2010) (per curiam).

13  Thus, a reviewing court such as this one must "decide whether the California judicial decision

14  approving the [Board's] decision rejecting parole was an 'unreasonable application' of the

15  California 'some evidence' requirement or was it 'based on an unreasonable determination of the

16  facts in light of the evidence.'"[4]  Hayward, 603 F.3d at 562-63.

17         The analysis of whether some evidence supports denial of parole to a California state

18  inmate is framed by the state's statutes and regulations governing parole suitability

19  determinations.  See Irons v. Carey, 505 F.3d 846, 851 (9th Cir. 2007), overruled in part on other

20  grounds, Hayward, 603 F.3d 546.  This court "must look to California law to determine the

21  findings that are necessary to deem a prisoner unsuitable for parole, and then must review the

22

---

23         [4] To the extent that the Respondent argues that Petitioner's claim is not cognizable on
    federal habeas review under AEDPA or that Petitioner does not have a federally protected
24  interest in parole, the Ninth Circuit has specifically held that "due process challenges to
    California courts' application of the 'some evidence' requirement are cognizable on federal
25  habeas review under AEDPA," and that "California's 'some evidence" requirement is a
    component of the liberty interest created by the parole system of that state."  Cooke, 606 F.3d at
26  1213 (citing Hayward, 603 F.3d at 561-64).

1  record to determine whether the state court decision holding that these findings were supported

2  by 'some evidence' . . . constituted an unreasonable application of the 'some evidence'

3  principle." Id.

4      California Penal Code section 3041 sets forth the state's legislative standards for

5  determining parole for life-sentenced prisoners.  Section 3041(a) provides that, ""[o]ne year prior

6  to the inmate's minimum eligible release date a panel . . . shall again meet with the inmate and

7  shall normally set a parole release date."  Cal. Penal Code § 3041(a).  However, subsection (b)

8  states an exception to the regular and early setting of a life sentence term, if the Board determines

9  "that the gravity of the current convicted offense or offenses, or the timing and gravity of current

10  or past convicted offense or offenses, is such that the consideration of public safety requires a

11  more lengthy period of incarceration for this individual."  Cal. Penal Code § 3041(b).

12      Title 15, Section 2281 of the California Code of Regulations sets for various factors to be

13  considered by the Board in its parole suitability findings for life prisoners.  The Board is directed

14  to consider all relevant, reliable information available regarding:

15          the circumstances of the prisoner's: social history; past and present
        mental state; past criminal history, including involvement in other
16          criminal misconduct which is reliably documented; the base and
        other commitment offenses, including behavior before, during and
17          after the crime; past and present attitude toward the crime; any
        conditions of treatment or control, including the use of special
18          conditions under which the prisoner may safely be released to the
        community; and any other information which bears on the
19          prisoner's suitability for release.

20  15 Cal. Code Regs. § 2281(b).  The regulation also lists several specific circumstances which

21  tend to show suitability or unsuitability for parole.  Id. § 2281(c)-(d).[5]  The overriding concern is

22

23      [5] Circumstances tending to indicate unsuitability include:

24          (1) Commitment Offense.  The prisoner committed the offense in an especially
        heinous, atrocious or cruel manner.  The factors to be considered include:
25              (A) Multiple victims were attacked, injured or killed in the same or
        separate incidents.
26              (B) The offense was carried out in a dispassionate and calculated manner,

1  public safety and the focus is on the inmate's *current* dangerousness.  See In re Lawrence, 44

2  Cal. 4th at 1205, 82 Cal. Rptr. 3d 169, 190 P.3d 535.  Thus, the proper articulation of the

> such as an execution style murder.
> (C) The victim was abused, defiled or mutilated during or after the offense.
> (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
> (E) The motive for the crime is inexplicable or very trivial in relation to the offense.
> (2) Previous Record of Violence.  The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
> (3) Unstable social history.  The prisoner has a history of unstable or tumultuous relationships with others.
> (4) Sadistic Sexual Offenses.  The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.
> (5) Psychological Factors.  The prisoner has a lengthy history of severe mental problems related to the offense.
> (6) Institutional Behavior.  The prisoner has engaged in serious misconduct in prison or jail.

13  15 Cal. Code Regs. § 2281(c).

14  Circumstances tending to indicate suitability include:

> (1) No Juvenile Record.  The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.
> (2) Stable Social History.  The prisoner has experienced reasonably stable relationships with others.
> (3) Signs of Remorse.  The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving the suffering of the victim, or indicating that he understands the nature and magnitude of the offense.
> (4) Motivation for Crime.  The prisoner committed his crime as the result of significant stress in his life, especially if the stress has built over a long period of time.
> (5) Battered Woman Syndrome.  At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.
> (6) Lack of Criminal History.  The prisoner lacks any significant history of violent crime.
> (7) Age.  The prisoner's present age reduces the probability of recidivism.
> (8) Understanding and Plans for Future.  The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.
> (9) Institutional Behavior.  Institutional activities indicate an enhanced ability to function within the law upon release.

26  Id. § 2281(d).

8

1  standard of review is not whether some evidence supports the reasons cited for denying parole,

2  but whether some evidence indicates that the inmate's release would unreasonably endanger

3  public safety.  See In re Shaputis, 44 Cal. 4th at 1254, 82 Cal. Rptr. 3d 213, 190 P.3d 573.  There

4  must be a nexus between the facts relied upon and the ultimate conclusion that the prisoner

5  continues to be a threat to public safety.  In re Lawrence, 44 Cal. 4th at 1227, 82 Cal. Rptr. 3d

6  169, 190 P.3d 535.  As to the circumstances of the commitment offense, the Lawrence court

7  concluded that while:

8        the Board and the Governor may rely upon the aggravated
       circumstances of the commitment offense as a basis for a decision
9        denying parole, the aggravated nature of the crime does not in and
       of itself provide some evidence of current dangerousness to the
10       public unless the record also establishes that something in the
       prisoner's pre- or post-incarceration history, or his current
11       demeanor or mental state, indicates that the implications regarding
       the prisoner's dangerousness that derive from his or her
12       commission of the commitment offense remain probative to the
       statutory determination of a continuing threat to public safety.

13
    Id. at 1214, 82 Cal. Rptr. 3d 169, 190 P.3d 535.
14
            i.      2006 Board Decision
15
        The panel of the Board that presided over Petitioner's 2005 suitability hearing considered
16
    the factors bearing on Petitioner's suitability for parole and weighed those factors against
17
    releasing Petitioner on parole.  The Board stated the following in deciding to deny Petitioner
18
    parole:
19
        [T]he Panel has reviewed all the information received and we've
20       relied on the following circumstances in concluding that you are
       not yet suitable for parole and you would pose an unreasonable risk
21       of danger to society or a threat to public safety if released from
       prison.  We're giving you a one year denial.  And I'm sure that
22       doesn't make you happy but to be honest with you Mr. Jackson,
       you've spent 28 years in prison and a lot of time you can't account
23       for.  I have had inmates in front of me, seriously, that have had
       three, four, five vocations and have managed to get AA Degrees,
24       Bachelor's Degrees and PhD's.  I have had people that have done
       hundreds of self-help classes.  There are people that have donated
25       all of their time to Christmas festivals for children, dealing with
       wayward youths and the juvenile justice system.  I'm concerned
26       that I have found you to have isolated yourself from all of those

9

kinds of activities under two issues. One, your religious beliefs and processes that you follow, and work. You could have done so much more with your life than you have already done, and I'm not trying to take away from what you've done. But you could have done a whole lot more especially based on your prior history, and the nature of the offense for which you were involved in, and the fact that you did go on a crime spree and regardless of what Dr. Davis thinks about it, we both agree that those were very violent behaviors and crimes. Maybe you didn't punch someone in the face, but there's something called trauma and stress that you wreak havoc with during the course of your lifetime. With regards to making amends, I don't see a lot of that here.

Anyway, with regards to the commitment offense, it was carried out in an especially cruel and callous manner. Multiple victims were involved during the course of your crime spree that you were involved in. The offense was carried out in a calculated manner. You yourself admitted you spent a month planning for this particular crime, not to mention your crime partner spent an excess of a year. The victim was abused and mutilated I would think in my mind when he was shot up with something that he didn't know what and it was to put him to asleep, you can't even tell us to this day what was injected into your victim. And yet, you even said he could have died. The motive for the crime was very trivial in relationship to the fear, I would think, and the havoc it played upon all the victims in this particular set of circumstances.

Conclusions are drawn from the Statement of Facts that came from the 2006 April Board report which I have already previously read into the record. But, primarily, Mr. Jackson and his co-defendants kidnapped a young man at gunpoint and tied him up, put him into the back seat, a ransom note was sent to his parents, and I can only imagine their feeling wondering whatever happened to their son. Money was demanded. The young man was injected with some kind of drugs so he would sleep. Fortunately for the young man and maybe for Mr. Jackson, he escaped without any harm done to him further.

With regards to Mr. Jackson's prior record on previous occasions, he's attempted to inflict injury on the victim just as in this circumstance of pointing a gun. When you point a gun at somebody, the use for a gun is usually to kill. You were very lucky sir in all of your circumstances that the use of the gun that you used in your previous crimes did not kill anybody. You do have a record of violent and assaultive behavior. You have an escalating pattern of criminal conduct. You have a history of unstable relationships with others; you're on your fourth marriage. You have failed previous grants of probation, previous grants of parole. You have failed to profit from society's attempt to correct you earlier on with regards to juvenile probation, juvenile hall, juvenile camp, adult probation, county jail, not to mention the youth

1    authority commitment, and four prison terms.

2    Your institutional behavior; regards to disciplinaries, you've
     received fifteen 115s, the last being 2001. In the scheme of things
3    five years is not a very long time to be disciplinary free. I think
     what bothered me more was the fact that you were not truthful with
4    us today about your 128As. We asked you did you get four, your
     answer was yes. We found nineteen 128As. Again, an example of
5    lying to us specifically during the course of this hearing. It's in
     your previous records as to what you had served. I find it very
6    disconcerting.

7    You have programmed in a limited manner. You have gotten your
     GED and nine credits of college after that in 28 years. You've
8    gotten one vocation in 28 years and that was back in '94, so that's
     12 years old. I think that you have not sufficiently participated in
9    beneficial self-help programs as well. I am going to mention in a
     moment the things that you've done well, but not just well enough
10   at this point in time.

11   The psychiatric evaluation; both attorneys agreed did not give you
     a suitable comparison, they compared you to the average inmate
12   when in fact regards to risk of dangerness, you should be compared
     to the average citizen. That evaluation is doing you a disservice
13   and so we are going to request a new psych eval with the right
     comparison on it for you so that's not used against you because it's
14   not an accurate evaluation for you.

15   Parole plans; you have a tremendous support system. What I'm
     concerned about is your potential for employment. The two areas
16   that you have job offers in, you have very little experience if any.
     You indicate to us that you would like to become an attorney.
17   You've had plenty of time to get a Bachelor's Degree while you've
     been in here. So you might want to take a look at expanding your
18   horizon there a little bit. Lots of times I found inmates wanting
     parole and can get all kinds of job offers, they don't have even the
19   slightest idea who wrote the letters for them because the family
     asked them to have a letter written and say will you write hire this
20   person. I'm not saying that's the case in your situation at all, I'm
     just saying that you told us both those two job offers were not what
21   you truly wanted to do. When people do things they don't truly
     want to do, they're very unhappy and then they start maybe making
22   not to good of decisions for themselves. We sent out letters that
     are called 3042 notices to agencies that have an interest in your
23   case. It can go to victims, next of kin; it can go to the police
     departments. Obviously, it went to the District Attorney's Office
24   in LA and Mr. Morrison indicated that the District Attorney's
     office who speaks for the people of Los Angeles are in opposition
25   to your parole at this time.

26   I do want to indicate for the record that I think that you started

                                    11

turning yourself around several years into this process. You have several good things working for you. You have no gang affiliation, you never had. That's a benefit to you. You have received a number of exceptional work evaluations. You've been a Muslim clerk now since the year 2001. You received your GED in '85 at San Quentin. You did mention some college courses you were taking. You received your Paralegal Certificate in 1994 through a correspondence course. You have done some work in the areas of automotive in '87 and office services, neither of which did you complete a vocation for those. You have participated in the Men's Violence Prevention Programs, Stress-Management and Creative Conflict Resolution. You spent some time involved in AA and NA I think '80 to '91. You did indicate to us that you last used drugs and alcohol in 1982, and that you felt your religious conversion was in 1987. You have chronos in '06, both in February, indicating that you have been an asset to the faith community here. And you have participated in the religious advisory community. So, you know, Mr. Jackson, you're starting to move forward into a terrific path and I glad you found some of the peace that you were striving for. Unfortunately, you left a trail behind you that's going to take awhile to clean up after. In summary, what I would like to see you do is I'd like to see you get out of your comfort zone and stretch yourself. I'd like to see you do some more work whether it's college, life skills, self-help, vocation. You found a comfort zone here where you're not stretching yourself, you're not being the best you can be.

(Pet'r's Pet. at p. 135-141.)

ii.     Superior Court Decision

On state habeas corpus review, the Los Angeles County Superior Court denied Petitioner's request for habeas relief. In denying Petitioner's state habeas petition, the Superior Court stated the following:

Having independently reviewed the record, giving deference to the broad discretion of the Board of Parole Hearings ("Board") in parole matters, the Court concludes that the record contains "some evidence" to support the determination that the Petitioner presents an unreasonable risk of danger to society and is, therefore, not suitable for release on parole. See Cal. Code Reg. Tit. 15, § 2402; In re Rosenkrantz (2002) 29 Cal. 4th 616, 667 . . . .

The Court finds that there is some evidence to support the Board's findings that the Petitioner's life-term offense was carried out in a dispassionate and calculated manner and that the victim was abused during the offense. Cal. Code. Regs., tit. 15 §2402, subds. (c)(1)(B) and (c)(1)(C). The Petitioner and his accomplices had

12

1  been watching the Cowan family for approximately 18 months in
preparation for kidnapping Kenneth Cowan. During the offense,
2  he was kidnapped at gunpoint, held against his will, and forced to
record his ransom video. Additionally, he was forcibly injected
3  with an unknown drug. These actions were deliberate,
premeditated, calculated, dispassionate, and abusive.
4
The Court also finds that there is some evidence to support the
5  Board's findings that there were multiple victims in the two
offenses and that Petitioner had a very trivial motive for
6  committing each offense. Cal. Code Regs. tit. 15, §2402, subds.
(c)(1)(A) and (c)(1)(E). In addition to Kenneth Cowan, there were
7  victims of the Petitioner's prior burglary. The Petitioner's motive
for both offenses was to get money. This is a very trivial motive
8  for the Petitioner's crime spree, which culminated in the burglary
and kidnapping for ransom.
9
Additionally, the Court finds that there is some evidence to support
10  the Board's finding that the Petitioner has a previous record of
violence. Cal. Code Regs., tit. 15, §2402, subd. (c)(2). Among the
11  Petitioner's many prior offenses, he was convicted of armed
robbery and robbery on several occasions. These prior, violent
12  offenses began when the Petitioner was a juvenile and continued
until he was incarcerated for the commitment offenses. This
13  demonstrates serious assaultive behavior at an early age.

14  The Board also considered the Petitioner's non-violent 115
violations, the last of which was in 2001, as well as his limited
15  programming. While these factors, alone, may not justify a finding
of unsuitability, the Board may properly consider them as relevant
16  to a determination of whether the Petitioner is suitable for parole.
Cal. Code Regs., tit. 15, §2402(b).
17
The Board also considered the Petitioner's post-conviction gains,
18  however, they still concluded that the Petitioner would pose an
unreasonable threat to public safety. Penal Code §3041(b). The
19  Court finds that there is some evidence to support this
determination because the commitment offenses involved multiple
20  victims, one of whom was abused, were committed in a
dispassionate and calculated manner, and had a very trivial motive
21  and because the Petitioner had a previous record of violence.
Additionally, the Petitioner's 15 total 115 disciplines, along with
22  his limited programming provide some evidence that he continues
to be an unreasonable risk of danger to society.
23
Accordingly, the petition is denied.
24

25  (Resp't's Answer, at Ex. 1, p. 3-5.)

26

13

1        iii.     Analysis of Claim I

2        The state court denied this Claim on the merits and specifically noted that "the record

3 contains 'some evidence' to support the determination that the Petitioner presents an

4 unreasonable risk of danger to society and is, therefore, not suitable for parole." (Id. (citations

5 omitted).) The issue is whether there is "some evidence" that indicates that the inmate's release

6 would unreasonably endanger public safety. See In re Shaputis, 44 Cal. 4th at 1254, 82 Cal.

7 Rptr. 3d 213, 190 P.3d 573. With respect to the commitment offense, the issue is whether there

8 is something in Petitioner's pre or post-incarceration history or his current demeanor or mental

9 state that supports the inference of current dangerousness. See Hayward, 603 F.3d at 562.

10        The record supports that there was "some evidence" to support the inference of

11 Petitioner's current dangerousness beyond merely the circumstances of the commitment offense.[6]

12 For example, the state court specifically noted: (1) Petitioner's previous record of violence

13 including convictions of armed robbery and robbery; and (2) Petitioner's several disciplinary

14 infractions while incarcerated, the last being only five years before his parole suitability hearing

15 in 2006. This evidence cited by the state court is supported in the record and creates a modicum

16 of evidence to create a nexus between the facts relied upon and the ultimate conclusion that the

17 prisoner continues to be a threat to public safety. See In re Lawrence, 44 Cal. 4th at 1226, 82

18 Cal. Rptr. 3d 169, 190 P.3d 535 (stating that the deferential standard of review requires credit to

19 be given to findings if they are supported by a modicum of evidence). The record supported

20

---

21       [6] The Los Angeles Superior Court cited to the wrong California regulation that controls in Petitioner's case. As stated in Part IV.A.ii, the Superior Court cited to 15 Cal. Code Regs. §
22 2402 in analyzing the Board's decision to deny Petitioner parole. However, § 2402 applies "to prisoners sentenced to prison for first and second degree murders committed on or after
23 November 8, 1978 and attempted murders where the perpetrator is sentenced for life pursuant to the provisions of Penal Code Section 664." 15 Cal. Code Regs. § 2400. In this case, Petitioner's
24 commitment offense was kidnapping, not first, second or attempted murder. Thus, § 2281 sets forth the factors to consider in determining whether Petitioner is suitable for parole. See 15 Cal.
25 Code Regs. § 2280. Nevertheless, because § 2281 and § 2402 are identical, the Superior Court's error in citing to the wrong California regulation is harmless. See In re Lawrence, 44 Cal. at
26 1201 n.5, 82 Cal. Rptr. 3d 169, 190 P.3d 535 (explaining that § 2281 is identical to § 2402).

1   Petitioner's previous record of violence in that he "inflicted or attempted to inflict serious injury

2   on a victim" and that this assaultive behavior was demonstrated by Petitioner at an early age as

3   evidenced by his prior robbery convictions. See 15 Cal. Code Regs. § 2281(c)(2).  Furthermore,

4   Petitioner has several disciplinary infractions while incarcerated.  The Board specifically found

5   that "five years is not a very long time to be disciplinary free." (Pet'r's Pet. at p. 138.)

6        Accordingly, under Hayward/Lawrence, there was a nexus of the facts relied upon and

7   Petitioner's current dangerousness.  There was a modicum of evidence in the record that

8   supported the Board's ultimate determination that Petitioner posed a current risk of danger to

9   society such that Petitioner's constitutional rights were not violated by the denial of his parole.[7]

10  Petitioner is not entitled to relief on Claim I as Petitioner has not shown that the denial of his

11  parole involved an unreasonable application of clearly established federal law.

12       B.    Claim II

13       In Claim II, Petitioner asserts that his "positive efforts over twenty eight years supports

14  suitability for parole and outweigh all negative factors of unsuitability for parole." (Pet'r's Pet. at

15  p. 10.)  In his Petition, Petitioner attempts to analyze each of the factors set forth in 15 Cal. Code

16  Regs. § 2281(c)-(d) to argue that the positive factors for parole suitability outweigh the negative

17  factors.  The specific manner in which the Board weighed and balanced the parole suitability

18  factors lies with the discretion of the Board, see, e.g., In re Shaputis, 44 Cal. 4th at 1260, 82 Cal.

19

20       [7] Both the Board and the Superior Court also cited to Petitioner's "limited programming"
     as additional "some evidence" that Petitioner continues to be an unreasonable risk of danger to
21   society.  In light of the fact that the other reasons cited by the Superior Court (and the Board) are
     supported in the record, this Court need not and declines to address whether Petitioner's
22   purported "limited programming" was supported in the record. Cf. Biggs v. Terhune, 334 F.3d
     910, 915-16 (9th Cir. 2003) (finding that even where many of the Board's conclusions and
23   factors relied upon were devoid of an evidentiary basis, the petitioner was still not entitled to
     federal habeas relief because there was other "some evidence" which did not entitle petitioner to
24   federal habeas relief at that time) overruled on other grounds, Hayward, 603 F.3d 546; In re
     Cerny, 178 Cal. App. 4th 1303, 1310-16, 101 Cal. Rptr. 3d 2000 (2009) (denying state habeas
25   petition where Board's decision to deny parole included many factors that were unsupportable,
     but also included the factor that petitioner was without verifiable parole plans such that the Board
26   found that petitioner might revert to prior drug use).

1  Rptr. 3d 213, 190 P.3d 573, and it is not the province of this Court to reweigh the evidence

2  considered by the Board. See, e.g., Superintendent v. Hill, 472 U.S. 445, 455-56 (1985) ("[T]he

3  relevant question is whether there is any evidence in the record that could support the conclusion

4  reached by the . . . board."). As noted in supra Part IV.A.iii, there was "some evidence" that

5  supported the Board's decision to deny Petitioner parole at the 2006 parole suitability hearing.

6  Thus, Petitioner is not entitled to federal habeas relief on Claim II when he seeks to have this

7  Court re-weigh the parole suitability factors.

8      C.    Claim III

9          Finally, in Claim III Petitioner asserts that the Board's decision to deny him parole

10  amounts to a violation of the Ex Post Facto Clause by effectively changing his sentence to that of

11  one of life without the possibility of parole. Contrary to Petitioner's assertions, the Board did not

12  alter his sentence when it denied him parole at the 2006 suitability hearing. By denying him

13  parole in 2006, the Board did not deny him parole forevermore. The Board specifically noted

14  that Petitioner was "starting to move forward into a terrific path." (Pet'r's Pet. at p. 141.)

15  Petitioner remains eligible for parole at future parole suitability hearings. See Cal. Penal Code §

16  3041. Therefore, as Petitioner's sentence is unchanged, there is no Ex Post Facto violation.

17  Furthermore, to the extent that Petitioner also argues that the Board's purported change in his

18  sentence to life without parole violated the Due Process and Equal Protection Clause (see Pet'r's

19  Pet. at p. 20.), those claims fail for the same reason. Petitioner is not entitled to federal habeas

20  relief on Claim III.

21      D.    Request for Appointment of Counsel

22          Next, Petitioner requests that this Court appoint Petitioner counsel. (See Pet'r's Pet. at p.

23  28.) There currently exists no absolute right to the appointment of counsel in habeas

24  proceedings. See Nevius v. Sumner, 105 F.3d 453, 460 (9th Cir. 1996). However, 18 U.S.C. §

25  3006A authorizes the appointment of counsel at any stage of the case "if the interests of justice

26  so require." In the present case, this Court does not find that the interest of justice would be

1 || served by the appointment of counsel. Accordingly, Petitioner's request that counsel should be

2 || appointed should be denied.

3         E.       Request for an Evidentiary Hearing

4         Finally, Petitioner requests an evidentiary hearing concerning his claims. Pursuant to 28

5 || U.S.C. § 2254(e)(2), a district court presented with a request for an evidentiary hearing must first

6 || determine whether a factual basis exists in the record to support a petitioner's claims and, if not,

7 || whether an evidentiary hearing "might be appropriate." Baja v. Ducharme, 187 F.3d 1075, 1078

8 || (9th Cir. 1999); see also Earp v. Ornoski, 431 F.3d 1158, 1166 (9th Cir. 2005); Insyxiengmay v.

9 || Morgan, 403 F.3d 567, 669-70 (9th Cir. 2005). A petitioner requesting an evidentiary hearing

10 || must also demonstrate that he has presented a "colorable claim for relief." Earp, 431 F.3d at

11 || 1167 (citations omitted). To show that a claim is "colorable," a petitioner is "required to allege

12 || specific facts which, if true, would entitle him to relief." Ortiz v. Stewart, 149 F.3d 923, 934 (9th

13 || Cir. 1998) (internal quotation marks and citation omitted).

14         In this case, an evidentiary hearing is not warranted for the reasons stated in Parts IV.A-

15 || C. Petitioner failed to demonstrate that he has a colorable claim for federal habeas relief.

16                               V. CONCLUSION

17         For all of the foregoing reasons, IT IS HEREBY ORDERED that:

18         1. Petitioner's request for appointment of counsel is DENIED; and

19         2. Petitioner's request for an evidentiary hearing is DENIED.

20         IT IS HEREBY RECOMMENDED that Petitioner's application for writ of habeas corpus

21 || be denied.

22         These findings and recommendations are submitted to the United States District Judge

23 || assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days

24 || after being served with these findings and recommendations, any party may file written

25 || objections with the court and serve a copy on all parties. Such a document should be captioned

26 || "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections

1   shall be served and filed within seven days after service of the objections.  The parties are

2   advised that failure to file objections within the specified time may waive the right to appeal the

3   District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).  In any objections he

4   elects to file, Petitioner may address whether a certificate of appealability should issue in the

5   event he elects to file an appeal from the judgment in this case.  *See* Rule 11, Federal Rules

6   Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability

7   when it enters a final order adverse to the applicant).

8   DATED:  September 14, 2010

9
                                        TIMOTHY J BOMMER
10                                      UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26